## SUPREME COURT.

HIRAM P. CROZIER agt. THE BOSTON, NEW YORK AND NEWPORT STEAMBOAT COMPANY, appellant.

A *steamboat company* is liable, as a common carrier, for the loss of *baggage* of a passenger stolen or robbed in the night time from the state room occupied by him t . . . . . . . . . s h.s paid, there being no negligence on his part; although the baggage is such as the passenger may choose to retain upon his person or in his own custody—such as a pocket book, money, watch and chain, &c.

The rule requiring such baggage to be specially delivered into the custody of an officer of the boat, in pursuance of a printed notice posted up, is inapplicable to a passenger occupying a state room on a steamboat.

*Kings County, General Term, May,* 1871.

THIS action was tried before James C. Carter, Esq., referee, in New York, and judgment rendered for the plaintiff. The defendant appealed.

I. T. WILLIAMS, *for appellant.*

T. C. CRONIN, *for respondent.*

The following is the opinion of the referee.

J. C. CARTER, *Referee.*—It appears that on the 27th of June, 1868, the plaintiff, with his wife, was a passenger upon the steamer *Old Colony,* belonging to the defendants, on her trip from Newport. He purchased and paid in the usual way for tickets, and also took and paid for a state room. He retired at night and in the morning found that his room had been entered and his watch and chain and pocket book together with his wife's vail stolen. This action is brought to recover the damages thus sustained.

Crozier agt. The Boston, N. Y. & Newport Steambt. Co

It is urged, by way of defense, that if the action is to be regarded as founded upou the liability of the defendants as common carrriers, to carry safely and deliver the baggage of the plaintiff, it must fail, for the reason that there was no delivery of the articles lost into the custody of the defendants, and that, consequently, no liability was ever imposed upon them in respect to the articles in question; and, in support of this view, I am referred by the defendants' counsel to the well established limitation of the liability of a common carrier, which exempts him from responsibility in respect of baggage or other property which the passenger may choose to retain upon his person, or in his own custody. Undoubtedly the common carrier should generally be permitted to have the custody of all property for the safety of which he is chargeable; and if a passenger by any public conveyance, such as a stage, railroad car or steamboat, chooses to retain any portion of his baggage or money about his person, it is equivalent to a declaration on his part that he will take the responsibility upon himself, and if he is robbed of it in broad daylight he has no one to blame but himself.

I think, however, that the case of a passenger occupying a state room on a steamboat is totally different, and that the rule referred to is quite inapplicable to it. In such a case, the passenger is invited, upon the payment of a consideration, to disrobe himself and retire to a couch to sleep; in other words, he is invited to throw aside all the vigilance and precaution which men habitually practice when awake, and to entrust his person, and whatever men usually carry about their persons, to the care and vigilance which, it must be presumed, they who extend the invitation and receive the reward for the comfort thus afforded, will themselves exercise. Certainly, few persons would dare trust themselves to sleep in a state room on board a steamboat unless they supposed those in charge of it were under an obligation to exercise the utmost vigilance. If it were supposed that thieves and robbers were at liberty to ply their vocation at night in such

a place, and that those who alone had the power to furnish protection against them, were under no obligation to furnish it, slumber would be unknown, unless the sleeper had taken the precaution to hire a special watchman. Nor can it be in the contemplation of either carrier or passenger that the latter, should make a special deposit of his pocket-money or articles usually carried about the person before retiring to rest. As well might we suppose that it was in contemplation that the passenger should deliver the clothes he takes off unto the special custody of the carrier. Nothing like this was, in my judgment, contemplated by the printed notice which was proved to have been posted in the state rooms.

It seems to me, that when in such cases the passenger retires to his room, takes the precautions, in the way of latching and bolting the doors and windows, which it is intended by the provision made therefor that he should take, divests himself of such portions of his clothing as comfort may suggest, and retires to rest, the situation is precisely what is contemplated by both parties; and I perceive in it all the elements of that form of liability which, under circumstances quite analagous, attaches to an innkeeper.

The rule of law applicable to such a case, I think to be this : that if any of the articles or money which the passenger properly has with him in the state room, is stolen, the presumption is, that the theft was in consequence of the default of the carrier ; and that this presumption can be repelled only by proof that the loss was attributable to the negligence or fraud of the passenger, or to the act of God, or of the public enemy (*Hulett* agt. *Swift*, 33 *N. Y.*, 571). All the considerations of public policy which have operated to fix upon innkeepers the rigorous liability above indicated apply, as it seems to me, with increased force to the case of carriers of passengers under these circumstances.

If the foregoing views are correct, it follows that the defendants are liable, unless they can show some negligence or fraud on the part of the plaintiff, or some modification of

the rights or duties of the parties by virtue of some special agreement.

The effort was made to show that the affixing of the notices in the state room and elsewhere, was proof of such a modification, but I understand it to be well settled that mere proof of such posting of notices, without more, leave the common law liability unaffected.

It appeared, by the plaintiff's testimony, that the provision of locks and bolts on the state room door was imperfect, the lock being in such a condition that it would barely catch, and the separate bolt not capable of being passed into the socket, and that these defects were observed by the plaintiff on entering the room. It is urged that it was negligence on his part not to communicate information of these defects to the officers of the boat. If the plaintiff had discovered defects about the fastenings which seemed to have been recently occasioned, so as to suggest a question as to whether the carrier had had a fair opportunity to discover them, I should certainly hesitate before coming to the conclusion that he was not bound to call attention to them; but I do not think, that he was bound to summon the officers of the boat to examine partial defects like those in question, which might well have existed for a long time.

Some evidence was introduced by the defendants, for the purpose of contradicting the testimony of the plaintiff touching the defects in the fastenings; but it was quite too indefinite to be allowed any weight; nor do I think, that the plaintiff's case requires affirmative proof of negligence. It is enough for him to show the loss, and the carrier is presumptively responsible; and this presumption against the carrier cannot be repelled by proof that he exercised care and caution, however great; he must go further, and show negligence on the part of the passenger.

I observe, that the complaint apparently proceeds upon the view that negligence on the part of the carrier is to be affirmatively shown as a part of the plaintiff's case; and I

think, the allegation in that respect is sustained by the proof; but I do not think, that the plaintiff was bound to take that burden upon him.

I must, therefore, report in favor of the plaintiff for the damages sustained by the loss of watch and chain and money. It was not proved that the vail was his property, and presumptively it belonged to his wife.

The judgment was affirmed at general term, and the appellant acquiesced in the law of the case and paid the judgment.